**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **REBOOT MACON, LLC, *et al.*,** ) | |
| ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:21-CV-221 (MTT)** |
| ) | |
| **UNITED STATES OF AMERICA, *et al.*,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

Plaintiffs Reboot Macon, LLC, and Per Diem Market, LLC, bring this action under various theories of contract and constitutional law against the Small Business Administration ("SBA"), the SBA's Administrator Isabella Casillas Guzman in her official and individual capacity, the SBA's Deputy Associate Administrator for Capital Access John A. Miller in his individual capacity, and unnamed employees or agents of the SBA in their individual capacities.[1]  Docs. 25-1; 25-2.  The defendants moved to dismiss all claims.  Doc. 16.  For the following reasons, that motion is **GRANTED in part** and **DENIED in part**.

---

[1] Plaintiffs Reboot and Per Diem filed separate complaints that have now been consolidated at the request of the parties.  Docs. 12; 13.  After consolidation, and two days before the government's reply brief was due, the plaintiffs moved to amend (Doc. 25) and attached the proposed second amended complaints for both Reboot and Per Diem.  Docs. 25-1; 25-2.  In response, the government argued the plaintiffs were not diligent in seeking leave to amend, and even if they were, such an amendment would be futile.  Doc. 29 at 7-12.  The second amended complaints drop claims clearly lacking merit and clarify, at least for purposes of analysis, others.  The second amended complaints do not moot the government's motion to dismiss.  Accordingly, the plaintiffs' motion to amend (Doc. 25) is **GRANTED**.

## I. BACKGROUND

In March of 2021, Congress passed the American Rescue Plan Act ("ARPA" or "Act") as a part of the federal government's efforts to provide relief to individuals and businesses that most suffered the economic and public health effects of the COVID-19 pandemic.  Pub L. No. 117-2, 135 Stat. 4 (2021).  The Act allocated $28.6 billion for a Restaurant Revitalization Fund ("RRF" or "Fund") to be administered by the SBA to grant relief to eligible restaurants.  Docs. 25-1 ¶ 19; 25-2 ¶ 19.  The Act required the SBA for the first 21 days the RRF operated ("the priority period") to prioritize processing claims from restaurants "owned and controlled" by women, veterans, and socially and economically disadvantaged individuals.[2]  Docs. 25-1 ¶ 20; 25-2 ¶ 20.  The RRF opened May 3, 2021, and thus the priority period ended on May 24, 2021.  *See* 25-1 ¶ 1; 25-2 ¶ 1.

Reboot and Per Diem—both partially owned by a female and thus eligible to apply for relief during the priority period—submitted applications the day the Fund opened.  *See* Docs. 25-1 ¶¶ 2, 24; 25-2 ¶¶ 2, 24.  On May 15, 2021, Reboot and Per Diem received approval notices for $125,571.00.[3]  Docs. 25-1  ¶¶ 3, 30; 25-2 ¶¶ 3, 30.

---

[2] Specifically, the Act provides:

> During the initial 21-day period in which the Administrator awards grants under this subsection, the Administrator shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act (15 U.S.C. 632(n))), small business concerns owned and controlled by veterans (as defined in section 3(q) of such Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))). The Administrator may take such steps as necessary to ensure that eligible entities described in this subparagraph have access to grant funding under this section after the end of such 21-day period.

Pub L. No. 117-2, § 5003(c)(3)(A), 135 Stat. 4, 88 (2021).

[3] While Per Diem's second amended complaint claims the approval notice was for $125,571.00, the plaintiffs' response to the government's motion to dismiss claims "Reboot and Per Diem received confirmation letters from the SBA that their applications were approved in the amounts of $125,571.00

On June 23, 2021, Reboot and Per Diem "received an e-mail from the SBA stating that it would not be issuing funds for [their] approved application[s] due to lawsuits filed in Tennessee and Texas."  Docs. 25-1 ¶ 45; 25-2 ¶ 47.  Those lawsuits, which challenged the constitutionality of the priority afforded some applicants, led the SBA to stop processing priority applications.  Docs. 25-1 ¶¶ 45, 47, 49; 25-2 ¶¶ 47, 49, 50.  That meant the SBA funded applications filed after the plaintiffs' applications.  Although Reboot and Per Diem were "assured on multiple occasions that funds were allocated and set aside for its grant award," neither received grants.  Docs. 25-1 ¶ 58; 25-2 ¶ 67.

The SBA closed the RRF on July 2, 2021, with $18 billion paid to priority applicants, and the remainder to non-priority applicants.  Docs. 25-1 ¶ 53; 25-2 ¶ 63.  Nonetheless, the plaintiffs allege $85,589,836.30 remains undispersed.  Docs. 25-1 ¶ 57; 25-2 ¶ 66.  And while Reboot remains operational, Per Diem was forced to close, with creditors of Per Diem owed approximately $150,000.00.  Doc. 25-2 ¶ 56.

Reboot and Per Diem filed their complaints on June 30, 2021, their amended complaints on October 22, 2021, and most recently, their second amended complaints on January 26, 2022.  Docs. 1; 9; 25-1; 25-2.  In short, the plaintiffs allege they were "discriminated against based on the 'priority' status of [their] application[s]" based solely on the sex of their owner.  Docs. 25-1 ¶ 58; 25-2 ¶ 67.  The plaintiffs' operative complaints seek recovery under the theories of: (1) "recovery of grant;" (2) "equal protection violations and due process;" and (3) "*Bivins* [sic] claims."[4]  Docs. 25-1 ¶¶ 59-

---

and $108,108.54, respectively."  Doc. 23-1 at 1.  This discrepancy, however, is not material to the Court's analysis.

[4] The plaintiffs' first amended complaints, now superseded by their second, sought recovery under the theories of: (1) "recovery of grant;" (2) "contract;" (3) "promissory estoppel;" (4) "fraud and deceit;" (5) an

94; 25-2 ¶¶ 68-103.  As for relief, the plaintiffs seek injunctions that direct the SBA to fund their awards and cease any further discriminatory actions, or in the alternative, monetary damages.  Docs. 25-1 at 25-26; 25-2 at 23-24.

## II. STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id.* at 1232-33 (internal quotations and citation omitted).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony."  *Id.* at 1233.  While the government here initially introduced evidence outside the pleadings, that evidence has since been withdrawn.  Docs. 16-2; 28 at 3.  Accordingly, the Court will look only to the pleadings to determine whether there is jurisdiction.

### B. Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft*

---

"equal protection violation;" (6) "taking without compensation;" (7) "due process;" and (8) "negligence." Doc. 9 ¶¶ 48-88.  After the government moved to dismiss (Doc. 16), the plaintiffs conceded their "promissory estoppel, tort, and contract claims" should be dismissed "so they can proceed in the proper court."  Doc. 23-1 at 22.

*v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

### A. The Court Lacks Jurisdiction Over the Plaintiffs' Contract Claims

Under 28 U.S.C. § 1491, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for

liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. §

1491(a)(1).  Thus, non-tort claims against the United States exceeding $10,000 must be

brought in the Court of Federal Claims.[5]  *Friedman  v. United States*, 391 F.3d 1313,

1315 (11th Cir. 2004).  A "plaintiff cannot avoid the jurisdiction of the Court of Federal

Claims by alleging other claims sounding in tort in his complaint."  *Jordan v. Def. Fin. &

Acct. Servs.*, 744 F. App'x 692, 696 (11th Cir. 2018) (citing *Friedman*, 391 F.3d at

1315).

 In this case, Reboot and Per Diem each seek to recover $125,571.00.  Docs. 25-

1 ¶ 30; 25-2 ¶ 30.  If the plaintiffs' "recovery of grant claim" states a claim, those claims

sound in contract and are within the exclusive jurisdiction of the Court of Federal

Claims.  *See Friedman*, 391 F.3d at 1315.  Accordingly, the Court lacks subject matter

jurisdiction over the plaintiffs' "recovery of grant" claims, and those claims are

**DISMISSED**.

## B.  The Plaintiffs Fail to State a *Bivens* Claim

 The plaintiffs seek monetary damages against named and unnamed SBA

officials in their individual capacities for alleged "due process" and "equal protection"

violations under *Bivens v. Six Unknown Named Agents of the Federal Bureau of

Narcotics*, 403 U.S. 388 (1971).[6]  The government contends the plaintiffs' claims are

---

[5] Under the "Little Tucker Act," district courts possess concurrent jurisdiction with the Court of Federal Claims to entertain any monetary claim against the United States for an amount not exceeding $10,000 "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort."  28 U.S.C. § 1346(a)(2).

[6] The plaintiffs' first amended complaint made no mention of *Bivens* and named only "John Does 1-99" as individual capacity defendants.  Doc. 9.  After the government noted this in its motion to dismiss, the plaintiffs clarified that their individual capacity claims were indeed raised under *Bivens*.  Docs. 16-1 at 16-17; 18 at 20-22.  The plaintiffs subsequently moved to amend, and with that motion granted, now raise individual capacity claims against SBA Administrator Guzman, SBA Deputy Associate Administrator Miller, and "John Does 1-99."  Docs. 25; 25-1; 25-2.

"new context" *Bivens* claims and should be dismissed.[7]  Docs. 16-1 at 16-17; 27 at 6-8; 29 at 8-12.  The plaintiffs argue that this case falls within an established *Bivens* context—gender discrimination under the Fifth Amendment.  Doc. 23-1 at 20-21.

An implied constitutional damages remedy against federal officials in their individual capacities has been recognized by the Supreme Court in three contexts: under the Fourth Amendment for an unreasonable seizure arising from a warrantless arrest of a man in his home, *Bivens*, 403 U.S. at 396; under the Fifth Amendment for gender discrimination arising from the termination of a congressional aide, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979); and under the Eighth Amendment arising from the failure to provide medical care to a prisoner, *Carlson v. Green*, 446 U.S. 14, 19 (1980).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).  Since those cases were decided, the Supreme Court has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Id.* at 1857 (collecting cases).

Determining the viability of a *Bivens* claim requires a "two-step inquiry." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  First, the court must ask whether the claim "arises in a 'new context' or involves a 'new category of defendants'" different from those in *Bivens*, *Davis*, or *Carlson*.  *Id.* (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S.

---

[7] The precise nature of the plaintiffs' *Bivens* claims are unclear.  Although labeled "due process" claims, their second amended complaints suggest they are due process claims only because the Fifth Amendment's due process clause guarantees the right of equal protection.  Docs. 25-1 ¶ 63; 25-2 ¶ 72. Yet elsewhere, they seem to suggest they contemplate asserting separate due process and equal protection claims.  Docs. 25-1 ¶¶ 68, 71, 84, 87; 25-2 ¶¶ 77, 80, 93, 96.  But in their brief, the plaintiffs only argued gender discrimination in violation of their equal protection rights.  Doc. 23-1 at 20-22.  If they had asserted separate "due process" *Bivens* claims, those claims would fail, with even more certainty, for the same reasons their equal protection *Bivens* claims fail.

61, 68 (2001)).  The answer is almost always yes because a context is "new" if a claim

differs in any "meaningful way … even if it is based on the same constitutional

provision" as the claims in those cases.  *Id.*  For example, a case might differ in a

meaningful way "because of the rank of the officers involved" or because of "the

generality or specificity of the official action."  *Abbasi*, 137 S. Ct. at 1860.  When a case

arises in a new context, the court "must proceed to the next step and ask whether there

are factors that counsel" against implying a *Bivens* remedy in such a context.

*Hernandez*, 140 S. Ct. at 744.  To "be a 'special factor counselling hesitation,' a factor

must cause a court to hesitate before answering that question in the affirmative."

*Abbasi*, 137 S. Ct. at 1858.

　　　1. The Plaintiffs' Bivens Claims are "New Context" Claims Against a "New
　　　Category" of Defendants

　　　The plaintiffs' *Bivens* equal protection claims bear only a high-level similarity to

*Davis*: they involve alleged gender-based discrimination under the Fifth Amendment.

*See* 442 U.S. at 248-49.  But as the Supreme Court in *Abbasi* made clear, it is not

enough that the mechanism of injury—gender discrimination—echoes a previously

established *Bivens* remedy.  137 S. Ct. at 1859.  When the Supreme Court implied a

*Bivens* remedy in *Davis*, it did so *only* in a case where a congressman personally and

affirmatively took egregiously unconstitutional action—the congressman acknowledged

in writing he would not promote a qualified female because he thought it essential a

male hold the position.  *See Davis*, 442 U.S. at 247, 231.  Significantly, the plaintiff in

*Davis* had no alternative remedy; as a Congressional employee, she did not enjoy the

protection of Title VII.  *Id.* at 247.  Consequently, the Supreme Court recognized a new

*Bivens* cause of action under the Fifth Amendment so that she could bring a discrimination suit directly against the congressman. *Id.*

Other than the theory of their claims—equal protection—the plaintiffs make no effort to argue their cases bear any similarity to *Davis*. *See* Doc. 23-1 at 20-21. Nor could they. First, to state the obvious, the corporate plaintiffs are not employees alleging workplace misconduct, much less uniquely situated congressional employees. Thus, they propose a new *Bivens* remedy for not only a new category of defendants, but also a new category of plaintiffs. Second, they propose extending a *Bivens* remedy to a context vastly different from the relatively settled norms of promotion decisions in employment relationships. Third, the high-level official action at issue here, in terms of its "generality" or "specificity," is hardly comparable to a congressman's admitted gender discrimination. More differences could be cited, but that is enough—particularly given the plaintiffs' failure to cite similarities to illustrate their *Bivens* claims are not "new context" claims.

### 2. Special Factors Counsel Against Extending a Bivens Remedy

When a case presents a new *Bivens* context, the Court must assess if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857. Those factors include whether "alternative avenues for compensation" exist, and "the risk of interfering with the authority of the other branches" of government. *Hernandez*, 140 S. Ct. at 743, 749. In short, the special factors inquiry focuses "on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58.

In this case, alternative processes protect the right at issue, namely the plaintiffs' ability to bring their contract claims in the Court of Federal Claims. *See id*. at 1858 ("[A]n alternative remedial structure present in a certain case … alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."). Thus, "the operative 'question [is] whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Big Cats of Serenity Springs, Inc. v. Rhodes,* 843 F.3d 853, 862 (10th Cir. 2016) (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)). In other words, "the appropriate consideration is whether an alternate, existing process demonstrates Congress's *intent* to exclude a damages remedy." *Id.* To the extent the plaintiffs assert some form of contractual wrongdoing, the Court of Federal Claims provides an avenue for relief.

Even were an alternative remedy not available, special factors counsel hesitation. For one, "separation-of-powers principles" are in play. *Abbasi*, 137 S. Ct. at 1857. As the government points out, "despite Congress's demonstrated attention to various COVID-related economic relief programs in the American Rescue Plan Act and other similar statutes, Congress chose not to create a private cause of action against individual federal officials." Doc. 29 at 10. Such inaction was likely not inadvertent, but a conscious decision by Congress to refrain from creating a remedy for the alleged conduct the plaintiffs claim warrants relief. *See Attkisson v. Holder*, 925 F.3d 606, 622 (4th Cir. 2019) (declining to extend *Bivens* to the plaintiff's new context Fourth Amendment claim because "Congress has legislated extensively in the area of electronic surveillance and intrusions into electronic devices without authorizing damages for a Fourth Amendment violation[.]").

Similarly, the plaintiffs' attack the SBA's policy-based decision-making process. Challenges to "high-level executive policy" bear "little resemblance to the three *Bivens* claims the [Supreme] Court has approved in the past" which "challenge[d] individual instances of discrimination or law enforcement overreach." *Abbasi*, 137 S. Ct. at 1860, 62. And new *Bivens* claims are particularly disfavored when they "call into question the formulation and implementation of a high-level executive policy" in a way that "would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 1849, 61. Of course, that is exactly what the plaintiffs seek to accomplish here. Maybe Congress and the SBA could have done better, but the fact is they were struggling to craft a plan for distributing limited RRF funds among a sea of qualified applicants in the face of a global pandemic and resulting economic uncertainty. And then the SBA, in full stride, had to react to challenges to Congress's prioritization scheme. A new *Bivens* cause of action is an inappropriate avenue for relief from such executive and legislative branch decisions. *See id.* at 1860-61.

In summary, the plaintiffs' *Bivens* claims present a new context and special factors counsel hesitation in extending *Bivens* to the facts of this case. Accordingly, the plaintiffs' *Bivens* claims are **DISMISSED**.

## C. The Plaintiffs' Constitutional Claims for Injunctive Relief Survive for Now

The Court proceeds on the assumption that the plaintiffs' constitutional claims are the vehicle for their requested injunctive relief, because, for the reasons discussed above, those claims are the only claims that do not otherwise fail.[8] There have been at

---

[8] The availability of injunctive or declaratory relief is one way in which *Bivens* differs from 42 U.S.C. § 1983. The statutory language in § 1983 specifically provides a right of action for equitable relief. Such relief is unavailable under *Bivens*. As such, the Court construes the plaintiffs' claims for injunctive relief to be against the SBA and SBA Administrator Guzman in her official capacity.

least some instances where plaintiffs successfully challenged the SBA's RRF

distribution scheme and forced the agency to consider and fund their grant applications.

*See Vitolo v. Guzman*, 999 F.3d 353, 366 (6th Cir. 2021); *Blessed Cajuns LLC v.

Guzman*, No. 4:21-677-O, Doc. 18 at 11 (N.D. Tex. May 28, 2021).  Essentially, Reboot

and Per Diem want the same treatment.  Docs. 25-1 at 25-26; 25-2 at 23-24.

As things now stand, the government only argues that Per Diem's claim for

injunctive relief is moot because Per Diem is closed and Congress limited the RRF to

operational restaurants.[9]  Doc. 16-1 at 12-13.  Article III of the Constitution limits the

jurisdiction of federal courts to "cases" and "controversies."  *Lujan v. Defenders of

Wildlife*, 504 U.S. 555, 559 (1992).  "Because the judiciary is unelected and

unrepresentative, the Article III case-or-controversy limitation, as embodied in

justiciability doctrine, presents an important restriction on the power of the federal

courts."  *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998).  Thus,

there must be a "present, live controversy in order to 'avoid advisory opinions on

abstract propositions of law.'"  *Church of Scientology Flag Serv. Org., Inc. v. Cty. of*

---

[9] Both parties submitted evidence outside the pleadings in connection with this motion to dismiss.  Docs. 16-2; 23-2.  The government introduced a declaration from John A. Miller, the SBA's Deputy Associate Administrator for Capital Access, and the plaintiffs introduced an affidavit from Whitney Boyer, the majority owner of Reboot and Per Diem.  *Id*.  The plaintiffs subsequently moved to convert the government's pending motion to dismiss under Rules 12(b)(1) and 12(b)(6) into a motion for summary judgment under Rule 56.  Doc. 23.  The Court ordered the government to respond.  Doc. 24.  In its response, the government proposed that "as a practical matter, the Court can simply choose to ignore the Miller declaration and to dismiss the case without relying on it."  Doc. 28. at 3.  The Court accepts the government's withdrawal of its factual materials filed in support of its motion.  Accordingly, the plaintiffs' motion to convert (Doc. 23) is **DENIED**.  That moots one of the government's more creative arguments.  To illustrate that Per Diem lacks standing, the government submitted affidavit testimony establishing, it said, that someone at the SBA got around to checking into Per Diem and concluded that Per Diem was not eligible for relief because it was not "a restaurant."  Doc. 16-2.  Thus, the government argued, Per Diem lacked standing because it suffered no injury.  Doc. 16 at 10-12.  The standing doctrine is enjoying renewed vigor, but it would indeed be a neat trick if a party could submit untested, conclusory evidence suggesting that if the case proceeded to trial, the plaintiff would lose and therefore the plaintiff lacks standing and so no trial is necessary.

*Clearwater*, 777 F.2d 598, 604 (11th Cir. 1985) (quoting *Hall v. Beals*, 396 U.S. 45, 48 (1969). But "[a]s long as the parties have a concrete interest, however small, in the outcome, the case is not moot." *Ellis v. Railway Clerks*, 446 U.S. 435, 442 (1984).

But even though Per Diem is closed, it is unclear from the pleadings whether that closure is permanent, or whether Per Diem was closed at the time the SBA initially approved Per Diem's RRF award, or whether that would make any difference. *See* Doc. 25-2. Moreover, the plaintiffs allege $85,589,836.30 remains in the RRF despite the closure of that fund on July 2, 2021. Docs. 25-1 ¶¶ 53, 57; 25-2 ¶¶ 63, 66. Taken as true, this would be a sufficient sum to fund the plaintiffs' awards. The Court cannot say based on this record that Per Diem's claims for injunctive relief are moot. *See Ellis*, 466 U.S. at 442. Accordingly, the government's motion to dismiss Per Diem's claim for injunctive relief is **DENIED without prejudice**.

## IV. CONCLUSION

For the reasons discussed above, the government's motion to dismiss (Doc. 16) is **GRANTED in part** and **DENIED in part**. Only the plaintiffs' constitutional claims for injunctive relief against the SBA and SBA Administrator Guzman in her official capacity remain. Accordingly, the plaintiffs' "recovery of grant" claims and *Bivens* claims are **DISMISSED.**

**SO ORDERED**, this 4th day of May, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT