IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| REBOOT MACON, LLC, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:21-cv-221 (MTT) |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiffs Reboot Macon, LLC, and Per Diem Market, LLC, contend the Small Business Administration ("SBA") failed to fund their applications for relief under the Restaurant Revitalization Fund ("RRF") based solely on the sex of their owner. Docs. 32 ¶ 58; 33 ¶ 67. The government moved to dismiss on a variety of grounds. Doc. 16. The Court granted the government's motion in part and allowed only the plaintiffs' constitutional claims for injunctive relief against the SBA and SBA Administrator Guzman in her official capacity to proceed. Doc. 31 at 13. The government now moves to dismiss the remaining constitutional claims for injunctive relief for lack of subject matter jurisdiction. Docs. 43; 51. For the following reasons, the government's second motion to dismiss, as amended, (Docs. 43; 51) is **GRANTED**. The plaintiffs shall file amended complaints by October 17, 2022.

### I. BACKGROUND

The motions practice in this case has been extensive, excessively so, but at least some of it bears repeating.

The government's first motion to dismiss was filed December 3, 2021, and before that motion was fully briefed, the plaintiffs moved to amend.  Docs. 16; 25.  The Court granted the plaintiffs' motion to amend, and because the amended complaints did not moot the government's motion to dismiss, evaluated the government's first motion to dismiss against the plaintiffs' proposed second amended complaints.  Doc. 31 at 1 n.1.  In the end, the Court dismissed all claims except for the plaintiffs' constitutional claims for injunctive relief against the SBA and SBA Administrator Guzman in her official capacity.  *Id.* at 13.  One week later, both Reboot and Per Diem filed their second amended complaints and served the same on the government.  Docs. 32; 33; 34; 35.

The government moved to strike the plaintiffs' second amended complaints because the "as-filed" complaints were not identical to the proposed complaints.  Doc. 36 at 2-3.  Simultaneously, the government moved for a more definite statement because "the second amended complaints d[id] not address the elements required to obtain permanent injunctive relief, nor d[id] they identify a sovereign immunity waiver or private right of action enabling the plaintiffs to obtain such relief against the federal government."  *Id.* at 3.  The Court denied both motions and ordered the government to respond to the operative complaint within twenty-one days.  Doc. 40.  The government did so with a motion to dismiss for lack of subject matter jurisdiction, this time arguing the plaintiffs' remaining claims must be dismissed because the plaintiffs cannot sue the federal government "without citing an explicit waiver of sovereign immunity," the same argument raised in their Federal Rule of Civil Procedure 12(e) motion.  Docs. 36; 43; 43-1 at 8.  The plaintiffs argued that the government was only permitted to file answers in response to their second amended complaints, and that a second motion to dismiss was therefore procedurally improper.  Doc. 44 at 2-3.  Because the government failed to

file an answer within twenty-one days of the Court's order, the plaintiffs then moved for default judgment. Doc. 45. The plaintiffs moved for preliminary injunctive relief the next day. Doc. 47.

The Court denied the plaintiffs' motion for default judgment because nothing in the Federal Rules of Civil Procedure or the Court's order for a *response* precluded the government from filing a motion to dismiss on jurisdictional grounds. Doc. 48 at 3. As to the government's second motion to dismiss, the Court ordered the government to amend its motion to explain "why the Court lacks subject matter jurisdiction to entertain constitutional claims against the government for injunctive relief," and then ordered the plaintiffs to substantively respond to the government's amended second motion to dismiss. Docs. 48 at 3; 51; 54; 56. The plaintiffs have done so, and now contend that their constitutional claims for injunctive relief are raised pursuant to the to Administrative Procedures Act ("APA"), 5 U.S.C. § 702. Doc. 54 at 6-7.

## II. STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For that reason, courts may dismiss cases for "lack of subject-matter jurisdiction" at any time. Fed. R. Civ. P. 12(b)(1). "A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. U.S. v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1232-33 (internal quotations and citation omitted). A factual attack, however, "challenges the existence of subject matter

jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233.  Here, the government's attack is facial—it argues the plaintiffs have not carried their burden of identifying an explicit waiver of sovereign immunity that confers subject matter jurisdiction on the Court.  Docs. 43-1; 53.  Accordingly, the Court will look only to the pleadings to determine whether there is jurisdiction.

### III. DISCUSSION

The APA waives sovereign immunity, allowing the United States to be sued in the district courts for remedies *other* than money damages arising from an agency's unlawful action.  5 U.S.C. § 702.  In ruling on the government's first motion to dismiss, the Court noted there were "at least some instances where plaintiffs successfully challenged the SBA's RRF distribution scheme and forced the agency to consider and fund their grant applications" and "[e]ssentially, Reboot and Per Diem want the same treatment."  Doc. 31 at 12 (citing *Vitolo v. Guzman*, 999 F.3d 353, 366 (6th Cir. 2021); *Blessed Cajuns LLC v. Guzman*, No. 4:21-677-O, Doc. 18 at 11 (N.D. Tex. May 28, 2021).  Implicit in that statement was that the plaintiffs' constitutional claims for injunctive relief, like the claims in *Vitolo* and *Blessed Cajuns*, were raised pursuant to the APA.[1]  The plaintiffs' response to the government's second motion to dismiss now make that clear.  Doc. 54 at 6-7.  Nonetheless, the scope of injunctive relief under the APA is narrow—an injunction cannot "interfere[] with public administration," or otherwise preempt an agency's authority.  *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550,

---

[1] The plaintiffs also contend that 15 U.S.C. § 634(b)(1)—a sue-or-be-sued clause that waives sovereign immunity for certain claims against SBA arising out of Chapter 14A of Title 15 is applicable here.  Doc. 54 at 3-5.  But § 634(b)(1) involves the Paycheck Protection Program ("PPP"), and as the government points out, plaintiffs' claims relate to the RRF, not the PPP.  Doc. 56 at 7.  Because the Administrator's authority to distribute RRF funds is in Chapter 116(I), "[i]t follows that Section 634(b) applies only to the duties of Chapter 14A."  *1800 Mich. Ave. v. SBA*, 2022 WL 2916677, at *2-3 (July 25, 2022).  Simply put, § 634(b)(1) doesn't help the plaintiffs.  The remainder of the plaintiffs' arguments concerning 28 U.S.C. § 1331, state-law official immunity, and qualified immunity are so misplaced they need not be addressed by the Court.

1555-56 (11th Cir. 1985).  For example, in *Vitolo*, the Sixth Circuit held that "[t]he government shall fund the plaintiffs' grant application, *if approved*, before all later-filed applications, without regard to processing time or the applicants' race or sex." 999 F.3d at 366 (emphasis added).  What the Sixth Circuit did not—and could not—do is order the SBA to fund Vitolo's application.

In other words, if the plaintiffs prevail on their claims that the SBA stopped processing their claims for discriminatory reasons in violation of the Equal Protection Clause, their remedy would be for the SBA to process the plaintiffs' claims and the result will be what it is.[2]  If the plaintiffs' second amended complaint can be read to the contrary, the government is correct—the plaintiffs cannot seize or attach money from the SBA or seek any other form of damages.  But what they can do, the government implicitly concedes (Doc. 56 at 6), is force the SBA to process their applications if they can prove the failure to do so was done for a discriminatory reason in violation of the Equal Protection Clause.  To that very narrow extent the government has waived sovereign immunity.

Nonetheless, the plaintiffs' operative complaints do not expressly mention the APA, and those pleading deficiencies must be corrected.  Accordingly, the government's second motion to dismiss, as amended, (Docs. 43; 51), is **GRANTED**.  The plaintiffs are **ORDERED** to amend their complaints to plead and clarify their APA claims by October 17, 2022.  The plaintiffs' amended complaints and the scope of requested relief shall be limited to relief allowed by the APA.  Because "[t]he focal point for judicial review of an administrative agency's action should be the administrative

---

[2] Although withdrawn by the government, a declaration submitted by John A. Miller, the SBA's Deputy Associate Administrator for Capital Access, suggests Per Diem's claim has already been processed and denied because the SBA concluded Per Diem was not "a restaurant," and thus not eligible for relief. Docs. 16-2; 28 at 3; 31 at 12 n.1.

record," discovery in this case is **STAYED**. *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Finally, given that the Court has ordered the plaintiffs to amend their complaints, the plaintiffs' motion for a preliminary injunction (Doc. 47) is **DENIED** as moot.[3]

## IV. CONCLUSION

For the reasons discussed, the government's second motion to dismiss, as amended, (Docs. 43; 51), is **GRANTED**. The plaintiffs are **ORDERED** to file their amended complaints by October 17, 2022. Given that the plaintiffs have now clarified the APA is the vehicle for their constitutional claims for injunctive relief, discovery in this case is **STAYED**. The plaintiffs' motion for preliminary injunctive relief (Doc. 47) is **DENIED** as moot.

**SO ORDERED**, this 3rd day of October, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] If addressed on the merits, the plaintiffs' motion for a preliminary injunction would similarly be denied. The plaintiffs appear to think that because a preliminary injunction was granted in other cases challenging the SBA's administration of the RRF, they are automatically entitled to the same relief. *See Vitolo*, 999 F.3d at 366; *Blessed Cajuns*, No. 4:21-677-O, Doc. 18 at 11 (N.D. Tex. May 28, 2021). Not so. Those lawsuits challenged the "race and sex preferences in grant funding" under the American Rescue Plan Act ("ARPA"). *Vitolo*, 999 F.3d at 356. In other words, *Vitolo* held that because the ARPA expressly allowed women and racial minorities to apply during the priority period, the statute facially discriminated on the basis of race and sex. *Id.* at 365-66. That is not the case here. Rather, the plaintiffs are challenging the SBA's processing scheme after the priority period afforded some RRF applicants under the ARPA was determined to be unconstitutional. That distinction is significant because it cannot be said that the SBA's decision to stop processing priority applications in response to lawsuits which challenged the constitutionality of the priority afforded some applicants was facially discriminatory. Nonetheless, the plaintiffs can still prevail if they can show the SBA's prioritization scheme was motivated by invidious discrimination. *See Washington v. Davis*, 426 U.S. 229, 241 (1976). But that is no easy feat— "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). The plaintiffs make no effort to establish discriminatory intent, and thus cannot point to any likelihood of success on the merits. *See Lange v. Houston Cnty., Georgia*, ___F. Supp. 3d___, 2022 WL 1812306, at *8-10 (M.D. Ga. June 2, 2022).