IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **REBOOT MACON, LLC**, *et al.*, ) <br> ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES OF AMERICA** ) <br> **SMALL BUSINESS ADMINISTRATION,** ) <br> ) <br> ) <br> **Defendant.** ) <br> _____) | **CIVIL ACTION NO. 5:21-cv-221 (MTT)** |

## ORDER

In this Administrative Procedures Act ("APA") action, Plaintiffs Reboot Macon, LLC, and Per Diem Market, LLC, contend the Small Business Administration ("SBA") failed to fund their applications for relief under the Restaurant Revitalization Fund ("RRF" or "Fund") based solely on the sex of their owner. Docs. 61 ¶¶ 72, 82; 62 ¶¶ 84, 94. The government now moves to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. Doc. 64. For the following reasons, the government's motion to dismiss (Doc. 64), as supplemented (Doc. 67), is **GRANTED**.

### I. BACKGROUND

**A. Plaintiffs' Third Amended Complaints**

In March of 2021, Congress passed the American Rescue Plan Act ("ARPA" or "Act") as a part of the federal government's efforts to provide relief to individuals and businesses that most suffered the economic and public health effects of the COVID-19 pandemic. Pub L. No. 117-2, 135 Stat. 4 (2021). The Act allocated $28.6 billion for a RRF to be administered by the SBA to grant relief to eligible restaurants. Docs. 61 ¶ 20; 62 ¶ 20. The Act required the SBA for the first 21 days the RRF operated ("the

priority period") to prioritize processing claims from restaurants "owned and controlled" by women, veterans, and socially and economically disadvantaged individuals. Docs. 61 ¶ 21; 62 ¶ 21. The RRF opened May 3, 2021, and thus the priority period ended on May 24, 2021. *See* Docs. 61 ¶ 1; 62 ¶ 1.

Reboot and Per Diem—both partially owned by a female and thus eligible to apply for relief during the priority period—submitted applications the day the Fund opened. *See* Docs. 61 ¶¶ 2, 29; 62 ¶¶ 2, 29. On May 15, 2021, Reboot and Per Diem received approval notices for $125,571.00. Docs. 61 ¶¶ 3, 31; 62 ¶¶ 3, 31. But on May 27, 2021, the SBA stopped processing priority applications and "rescinded previously awarded grants to priority applicants" due to lawsuits in Tennessee and Texas that successfully challenged the constitutionality of the priority afforded some applicants, and, as the plaintiffs allege, "trumped-up claims that further processing was required or that an entity was flagged as ineligible." Docs. 61 ¶¶ 46, 100-101; 62 ¶¶ 48, 112-113. That meant the SBA funded applications filed after the plaintiffs' applications.

On June 23, 2021, Reboot and Per Diem were notified by the SBA that their approved applications would not be funded because of the lawsuits. Docs. 61 ¶ 46; 62 ¶ 48. Although Reboot and Per Diem were "assured on multiple occasions that funds were allocated and set aside for its grant award," neither received grants. Docs. 61 ¶ 72; 62 ¶ 84. But as the plaintiffs allege, the SBA approved at least eight applications that were filed "days later" than the plaintiffs' applications. Docs. 61 ¶¶ 54-61; 62 ¶¶ 66-73. And Reboot is aware of "at least two instances," and Per Diem of "at least one," where a male-owned business whose application was "filed at a time after [the plaintiffs'], was approved and funded." Docs. 61 ¶ 53; 62 ¶ 57.

The SBA closed the RRF on July 2, 2021, with $18 billion paid to priority applicants, and the remainder to non-priority applicants.  Docs. 61 ¶ 65; 62 ¶ 77.  Nonetheless, the plaintiffs allege $85,589,836.30 remains undispersed.  Docs. 61 ¶ 71; 62 ¶ 83.  In summary, the plaintiffs contend they were "discriminated against based on the 'priority' status of [their] application[s]" based on sex in violation of the Equal Protection Clause—the plaintiffs acknowledge the APA provides the exclusive avenue for relief.  Docs. 61 ¶¶ 72-109; 62 ¶¶ 84-121.

**B. Procedural History**

The plaintiffs initially brought this action under various theories of tort, contract, and constitutional law against the SBA, the SBA's Administrator Isabella Casillas Guzman in her official and individual capacity, the SBA's Deputy Associate Administrator for Capital Access John A. Miller in his individual capacity, and unnamed employees or agents of the SBA in their individual capacities.[1]  Docs. 9; 25-1; 25-2.  The government moved to dismiss, but before that motion was fully briefed, the plaintiffs moved to amend to drop some claims and clarify others.  Docs. 16; 25.  The Court granted the plaintiffs' motion to amend, and because the amended complaints (Docs. 25-1; 25-2) did not moot the government's motion to dismiss, evaluated the government's first motion to dismiss against the plaintiffs' proposed second amended complaints.  Doc. 31 at 1 n.1.  In the end, the Court dismissed all claims except for the plaintiffs' constitutional claims for injunctive relief against the SBA and SBA Administrator Guzman in her official capacity.  *Id.* at 13.  One week later, both Reboot and Per Diem filed their second amended complaints.  Docs. 32; 33.

---

[1] Plaintiffs Reboot and Per Diem filed separate cases that have now been consolidated at the request of the parties.  Docs. 12; 13

The government moved to strike the plaintiffs' second amended complaints because the "as-filed" complaints were not identical to the proposed complaints. Doc. 36 at 2-3. Simultaneously, the government moved for a more definite statement because "the second amended complaints d[id] not address the elements required to obtain permanent injunctive relief, nor d[id] they identify a sovereign immunity waiver or private right of action enabling the plaintiffs to obtain such relief against the federal government." *Id.* at 3. The Court denied both motions and ordered the government to respond to the operative complaints within twenty-one days. Doc. 40. The government did so with a motion to dismiss for lack of subject matter jurisdiction, this time arguing the plaintiffs' remaining claims must be dismissed because the plaintiffs cannot sue the federal government "without citing an explicit waiver of sovereign immunity," the same argument raised in their Federal Rule of Civil Procedure 12(e) motion. Docs. 36 at 3; 43; 43-1 at 8. The plaintiffs argued that the government was only permitted to file answers in response to their second amended complaints, and that a second motion to dismiss was therefore procedurally improper. Doc. 44 at 2-3. Because the government failed to file an answer within twenty-one days of the Court's order, the plaintiffs then moved for default judgment. Doc. 45. The plaintiffs moved for preliminary injunctive relief the next day. Doc. 47.

The Court denied the plaintiffs' motion for default judgment because "[n]othing in the Federal Rules of Civil Procedure or the Court's order for a *response* precluded the government from filing a motion to dismiss on jurisdictional grounds." Doc. 48 at 3. As to the government's second motion to dismiss, the Court ordered the government to amend its motion to explain "why the Court lacks subject matter jurisdiction to entertain constitutional claims against the government for injunctive relief," and then ordered the

plaintiffs to substantively respond to the government's amended second motion to dismiss.  *Id*.  In their response, the plaintiffs clarified their constitutional claims for injunctive relief were brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.  Doc. 54 at 6-7.  But because "the plaintiffs' operative complaints d[id] not expressly mention the APA," the Court ordered the plaintiffs "to amend their complaints to plead and clarify their APA claims."  Doc. 58 at 5.  The plaintiffs filed their third amended complaints on October 17, 2022.  Docs. 61; 62.  Those complaints exclusively seek recovery under the APA, specifically injunctions directing the SBA to process the applications in the order that they were received.[2]  *See* Docs. 61 at 31; 62 at 31.

The government now moves to dismiss the plaintiffs' third amended complaints.[3]  Doc. 64.  The government argues the Court lacks subject matter jurisdiction because the plaintiffs' APA claims fail on standing and mootness grounds, because the plaintiffs' third amended complaint fails to identify any final agency action as required by 5 U.S.C. § 704, and even if the plaintiffs did identify a final agency action, the only available relief is an impermissible "obey the law" injunction.[4]  Doc. 64-1 at 15-22.  Alternatively, the government contends that even if the Court had subject matter jurisdiction, the plaintiffs have failed to state a claim because the third amended complaints "do not plausibly explain how SBA's handling of the plaintiffs' applications violated the APA."  *Id.* at 23.

---

[2] The plaintiffs assert that "the Court has ruled that plaintiffs have stated claims under the APA."  Doc. 65-1 at 5 (citing Docs. 31; 58).  As the government notes, that is incorrect "because the plaintiffs have not previously raised an APA claim."  Doc. 66 at 5.

[3] To the extent the plaintiffs assert Federal Rule of Civil Procedure 12(g) procedurally bars the government's motion to dismiss the plaintiffs' third amended complaints (Doc. 65-1 at 4-5), that argument is without merit.  5C Wright & Miller, *Federal Practice & Procedure* § 1361 (3d ed. 2022) (collecting cases) ("[W]henever the court allows a party to amend its pleading, the opposing party's right to interpose a Rule 12(b) motion is extended or revived accordingly.").

[4] The government's "no final agency action" defense, although likely meritorious, is on these facts galling.  Essentially, the government admits it dawdled but argues it wins because it ran out the clock.  *See* Doc. 64-1 at 20-22.  The Court does not reach that issue.

The government then supplemented its motion to dismiss on May 9, 2023, and raised two new arguments with respect to mootness.  Doc. 67.  The Court ordered the plaintiffs to substantively respond to the government's supplemental brief, and the government to reply.  Doc. 68.  With that briefing in hand (Docs. 69; 70), the government's motion to dismiss is ripe for review.

## II. STANDARD

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack."  *Stalley v. Orlando Reg'l Heathcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion."  *Id.* at 1232-33 (internal quotations and citation omitted).  A factual attack, however, "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233.  When a party mounts a factual attack, as the government does here, the Court may consider "extrinsic evidence" not contained in the pleadings.  *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).  "A district court evaluating a factual attack on subject matter jurisdiction 'may proceed as it never could' at summary judgment and 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

## III. DISCUSSION

The government's supplemental motion raises two arguments based on "new facts [that] have come to light providing additional reasons for the Court to dismiss

these cases for lack of subject-matter jurisdiction." Doc. 67 at 2. First, the government asserts that "[t]here is no money remaining in the RRF," so plaintiffs' claims are "moot and non-redressable because of the RRF's $0 balance," and second, that "the entire RRF award program ended with the expiration of the statutory covered period on March 11, 2023," so even if the plaintiffs prevailed and the Court ordered the SBA to process their applications—the only relief available to the plaintiffs—that money would have to be immediately returned to the Treasury. *Id.* at 2-3. Both developments raise "the jurisdictional question of mootness—that is, whether the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Health Freedom Def. Fund v. President of United States*, 71 F.4th 888, 891(11th Cir. 2023) (internal quotation marks and citations omitted). "In considering mootness, [the Court] look[s] at the events at the present time." *Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022). "If, due to events that have happened since the filing of the complaint, the court can no longer redress the injuries claimed by the parties, the case is moot and should be dismissed." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1304 (11th Cir. 2011).

**A. The Exhaustion of the RRF Moots the Plaintiffs' Claims**

The government, citing to the declaration of SBA Deputy Associate Administrator John A. Miller in a case from the Northern District of Ohio, contends "[t]here is no money remaining in the RRF." Doc. 67 at 2 (citing *W6 Rest. Grp., Ltd. v. Guzman*, 1:21-cv-2361-BMB (N.D. Ohio Mar. 6, 2023), Doc. 73-1). Specifically, Miller's declaration states that as of January 6, 2023, "the only money remaining in the RRF was preserved according to a temporary restraining order imposed by the U.S. District Court for the District of Columbia," and that when that case was dismissed on February

23, 2023, the "SBA distributed all remaining RRF funds." *W6 Rest. Grp.,* 1:21-cv-2361-BMB, Doc. 73-1 ¶¶ 3-4.  In response, the plaintiffs argue that "according to USASPENDING.gov, there is currently, as of [May 19, 2023], $129,391,483 of unobligated funds available in the RRF," which, the plaintiffs contend, is a more reliable source than Miller's "naked assertion, with no reference to documents, business records, or even a source."  Doc. 69 at 3 (citation omitted).

But Miller explains that discrepancy through a separate declaration attached to the government's reply in this case.  Docs. 70 at 2-3; 70-1 ¶¶ 4-6.  Miller testified that:

> Although the "FY2023 Snapshot" and "Spending Over Time" sections at the top of the USASpending.gov page indicate that the RRF has an "Unobligated Balance" of roughly $129 million, that does not mean that there is $129 million available for new RRF awards. The USASpending.gov page reflects accounting data applying a technical definition of "obligation," which is a specialized term of art in the appropriations context reflecting money transferred into, out of, and between different Government accounts. *See* Gov't Accountability Off., *Principles of Federal Appropriations Law*, § 7-2 (3d ed.), https://perma.cc/8VAC-YZH6 (explaining that "[t]he concept of 'obligation' is central to appropriations law" and defined in a case-by-case fashion through decades of GAO decisions). In this context, the "Unobligated Balance" accounts for transfers initiated by recipients to the Treasury Department; these funds do not exist in any meaningful or practical sense in the RRF, and cannot ever be awarded to RRF applicants. Simply stated, the "Unobligated Balance" does not reflect money within SBA's funding authority, which was only ever $28.6 billion, and all of which has been disbursed.

Doc. 70-1 ¶ 5.  Arguably, only a bureaucrat could understand that, but the ultimate conclusion is clear enough—"there is no money remaining for new RRF awards."  *Id.* ¶ 6.

This dispute, to the extent there is one after Miller's explanatory declaration, does not require the Court to convert the government's motion to dismiss to a motion for summary judgment as the plaintiffs contend.  *Lawrence*, 919 F.2d at 1529.  Nor are the plaintiffs entitled to discovery, which in any event is generally inappropriate in APA

cases. *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) ("The focal point for judicial review of an administrative agency's action should be the administrative record."). Rather, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Kennedy*, 998 F.3d at 1230.

Miller, who is "the highest-ranking career official in the Office of Capital Access" and "knowledgeable about the RRF program" which the Office of Capital Access administers, testified "that there is no money remaining for new RRF awards," and provided an explanation for why a government website reported information to the contrary. Doc. 70-1 ¶¶ 1, 4-6. To discount Miller's testimony, which Miller avers "is true and correct" pursuant to the provisions of 28 U.S.C. § 1746, would require the Court to conclude that Miller perjured himself. *Id.* at 2. The Court declines to reach that conclusion. Because the RRF has run dry, and because the only relief available to the plaintiffs requires the Court to direct the SBA to process RRF applications in the order that they were received, a depleted RRF renders that requested relief moot and the government is entitled to dismissal. *Fla. Wildlife Fed'n, Inc.*, 647 F.3d at 1304.

**B. The Expiration of the Statutory Covered Period Moots the Plaintiffs' Claims**

Even if there were money left in the RRF, the government is still entitled to dismissal because the RRF expired on March 11, 2023. The ARPA required that all RRF awards be "use[d]" during the statutory "covered period," which began on February 15, 2020, and expired on December 31, 2021, but could be extended to March 11, 2023, at the discretion of the SBA's Administrator. 15 U.S.C. § 9009c(a)(3); 15 U.S.C. § 9009c(c)(5). As authorized by the ARPA, the SBA's Administrator subsequently extended the covered period to March 11, 2023. *See* Press Release (No. 21-33), *SBA*

*Administrator Guzman Announces Application Opening for $28.6 Billion Restaurant Revitalization* (Apr. 27, 2021), https://perma.cc/F2X8-PHTP.  "If an eligible entity that receives a grant … fails to use all grant funds or permanently ceases operations on or before the last day of the covered period, the eligible entity shall return to the Treasury any funds that the eligible entity did not use."  15 U.S.C. § 9009c(c)(6).

The government's argument is simple—"now that the covered period is over, even an order directing SBA to process the plaintiffs' applications could not provide the plaintiffs with any meaningful relief" because they "would have to immediately return any RRF funds that SBA hypothetically awarded."[5]  Doc. 67 at 3.  The plaintiffs urge the Court not to take "use" in § 9009c(c)(6) literally.  Doc. 69 at 8.  They argue they had eligible expenses "incurred" during February 15, 2020 to March 11, 2023, and § 9009c(c)(5) states "an eligible entity that receives a grant under this subsection may *use* the grant funds for … expenses *incurred*" during the covered period.  *Id.* at 7-8; 15 U.S.C. § 9009c(c)(5) (emphasis added).  The problem for the plaintiffs is that they conflate the term "incurred" with the term "use."

"Statutory interpretation must begin with the language of the statute, which must be interpreted in accordance with its plain meaning."  *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1548 (11th Cir. 1990) (cleaned up).  In other words, the Court must "presume that Congress said what it meant and meant what it said."  *Davidson v. Cap. One Bank (USA), N.A.*, 797 F.3d 1309, 1316 (11th Cir. 2015) (quoting *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998)).  The government does not argue, as the plaintiffs appear to contend, that an RRF award could not be used to

---

[5] This argument is a close cousin to the "no final agency action" defense—the clock has run out.  But here the clock was set by Congress.

"reimburse" past expenses incurred from February 15, 2020 to March 11, 2023. Docs. 69 at 7-8; 70 at 3-4. Rather, the government's argument is that because the covered period is now over, and the plain language of the statute states "[i]f an eligible entity that receives a grant under this subsection fails to use all grant funds … on or before the last day of the covered period, the eligible entity shall return to the Treasury any funds that the eligible entity did not use." Doc. 70 at 4 (quoting 15 U.S.C. § 9009c(c)(6)).

The plaintiffs essentially ask the Court to tack on a carve-out to § 9009c(c)(6) which says, "except in cases where the SBA bungled the processing of the eligible entity's claims." But Congress did not write that, nor did Congress provide for "equitable tolling" when the SBA messes up, a doctrine which, in any case, has no bearing on the Court's interpretation of a discrete limitations period set by Congress rather than a generic statute of limitations. *See Villarreal v. R.J. Reynolds Tobacco Company*, 839 F.3d 958, 971 (11th Cir. 2016). In the end, the Court is bound by the plain language of the ARPA which says that any funds not used during the covered period *shall* be returned to the Treasury. *Weitz*, 913 F.2d at 1548; 15 U.S.C. § 9009c(c)(6). Because the covered period ended on March 11, 2023, the plaintiffs' claimed injury has become non-redressable, and the government is entitled to dismissal on mootness grounds. *Fla. Wildlife Fed'n, Inc.*, 647 F.3d at 1304.

### IV. CONCLUSION

Because the RRF has been depleted, and in any event, the statutory covered period for RRF awards expired on March 11, 2023, the plaintiffs' claims are moot. Accordingly, government's motion to dismiss (Doc. 64), as supplemented (Doc. 67), is **GRANTED**, and the plaintiffs' claims are **DISMISSED** without prejudice.

**SO ORDERED**, this 20th day of July, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
